**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG**

**DEBRA KAY LONG,**

       **Plaintiff,**

**v.**                         **CIVIL ACTION NO. 1:20-CV-201**
                                     **(JUDGE KEELEY)**

**KILOLO KIJAKAZI,[1]**
**Commissioner of Social Security,**

       **Defendant.**

## REPORT AND RECOMMENDATION

This case arises from the denial of Plaintiff Debra Kay Long's ("Plaintiff") Title II application for a period of disability and disability insurance benefits ("DIB"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of Defendant Andrew Saul, now Kilolo Kijakazi, the Commissioner of Social Security, ("Defendant" or "Commissioner"). Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for DIB is not supported by substantial evidence and contains errors which prove not to be harmless, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge recommending the Plaintiff's Motion for Summary Judgment, ECF No. 20, be **GRANTED**, the Defendant's Motion for Summary Judgment, ECF No. 22, be **DENIED**, the Commissioner's decision be **REVERSED** and that this case be **REMANDED** for further reconsideration.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi may be substituted for Andrew Saul as the defendant in this suit. Fed. R. Civ. P. 25(d).

## I.   PROCEDURAL HISTORY

On or about February 13, 2018, Plaintiff filed the present claim for DIB, with an alleged onset date of disability of February 12, 2018. R. 87, 375-376, 379-84. The claimant also filed a Title XVI application for supplemental security income on June 28, 2018. Id. Plaintiff's application for DIB was initially denied on September 4, 2018, R. 332-336, and upon reconsideration on December 14, 2018. R. 326. After these denials, on February 11, 2019, Plaintiff requested a hearing before an ALJ. R. 345-346. On October 31, 2019, a video hearing was held before ALJ L. Raquel BaileySmith. R. 209-235. At the hearing, Plaintiff was represented by counsel and appeared in Cumberland, Maryland, while ALJ BaileySmith appeared from Richmond, Virginia. Id.; R. 87. Andrew Caporale, a vocational expert ("VE"), appeared by telephone and testified at the hearing. Id. On December 2, 2019, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act. R. 87-99. On June 23, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1-7.

On August 13, 2020, Plaintiff Debra Kay Long ("Plaintiff"), by counsel Robert W. Gillikin, II, Esq., filed a Complaint in this Court to obtain judicial review of the final decision of Defendant Andrew Saul, now Kilolo Kijakazi, Commissioner of Social Security ("Commissioner" or "Defendant"), pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl., ECF No. 1. On February 18, 2121, the Commissioner, by counsel Erin Reisenweber, Assistant United States Attorney, filed an answer and the administrative record of the proceedings. Answer, ECF No. 14; Admin. R., ECF No. 15. On April 1, 2021, Plaintiff filed Plaintiff's Motion for Summary Judgment, ECF No. 20, along with a Memorandum in Support of Motion for Summary Judgment, ECF No. 21. On April 30, 2021, Commissioner filed his Motion for Summary Judgment, ECF No. 22, along with a Memorandum in Support of his Motion for

Summary Judgment, ECF No. 22-1. Soon thereafter, Plaintiff filed a reply to the Commissioner's brief. ECF No. 23.

The undersigned entered an Order, ECF No. 24, on October 22, 2021 setting this matter for limited oral arguments on two of the issues presented within the parties' briefs. Oral arguments were subsequently held by videoconference on November 19, 2021. ECF No. 29.[2]

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, and having considered the oral arguments presented, the undersigned now issues the following Report and Recommendation.

## II.   BACKGROUND

In accordance with the Court's Order Directing Filing of Briefs, the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. ECF No. 16 at 2. The undersigned relies upon those stipulated facts[3] throughout this report and recommendation but, for the sake of completeness, after considering the record in full, the undersigned will highlight select relevant facts below.

### A.  Personal History

Plaintiff Debra K. Long was born on February 16, 1965 and was an individual closely approaching advanced age[4] on the alleged disability onset date. R. 87 and 213. Plaintiff is a high

---

[2]  The audio recording of oral arguments – entitled "Tape #cbg aloi long v comm of soc sec 11192021" – is archived on the Court's intranet platform for FTR recordings.

[3] *See* Mem. Supp. Pl.'s Mot. Summ. J. No. ECF 21, at 2-3; Def.'s Brief Supp. Mot. Summ. J. ECF No. 22-1, at 3-6.

[4] Plaintiff was nearly fifty-three (53) years old age on the alleged disability onset date of February 12, 2018. On the date of the ALJ's issued decision, December 2, 2019, Plaintiff was fifty-four (54) years, nine and a half months old, two and a half months shy of being a "person of advanced age." *See generally* 20 C.F.R. § 404.1563(c)-(e); *see infra* at 26-28.

school graduate who completed nursing school in 2002. R. 409. She worked as a general duty nurse in nursing homes from 1996 through February 2018. R. 216. Plaintiff attempted to return to work as a nurse on May 17, 2018, but stop working on May 28, 2018, due to pain. R. 216. Plaintiff alleges disability beginning February 12, 2018, due to psoriatic arthritis, chronic migraines, spinal stenosis, and fibromyalgia. R. 332; 408.

### B. Medical History

Plaintiff has the following severe impairments: degenerative disc disease, fibromyalgia, obesity, and inflammatory arthritis (also diagnosed as rheumatoid arthritis and psoriatic arthritis). R. 90.

Further, Plaintiff has depression and anxiety, migraines, a right shoulder impairment – the severity of which are challenged here. R. 90; *see* ECF No. 22-1 at 3.

Plaintiff's depression and anxiety causes limitations in understanding, remembering, and applying information; interacting with others; and concentrating, persisting, or maintaining pace R. 90-91. Plaintiff sought therapeutic services for anxiety and depression at Mountain State Psychological Services. R. 754-71, 812-15.

Records throughout 2018 and 2019, discussed by the ALJ, show that Plaintiff's upper extremities consistently showed "full 5/5" muscle strength with no evidence of instability, "functional" and "full" range of motion, and "intact" sensation R. 93-95; *see*, *e.g.*, R. 510, 518, 522, 571, 577, 581, 620, 654. Plaintiff was diagnosed with right shoulder bursitis in June 2019, R. 634, after reporting to urgent care with right arm pain. With the exception of tenderness, the examination performed by Ronna Monseau, M.D., was unremarkable, revealing "normal" strength and full range of motion, R. 634; Plaintiff's x-ray was also normal, R. 636. Plaintiff had a follow-up examination with Preeti Panchang, M.D.; Dr. Panchang's examination revealed 5/5 shoulder strength and "[f]ull active range of motion of the right shoulder[.]" R. 748.

### C.  Medical Reports and Opinions

On August 31, 2018, after reviewing Plaintiff's records, state agency medical consultant Dr. Atiya M. Lateef found that Plaintiff was not disabled because she could perform light work, including her past relevant work as a general duty nurse as it was actually performed. R. 281-290.

On December 13, 2018, at the reconsideration level, after reviewing all evidence in Plaintiff's file, state agency medical consultant Dr. Hedy Mountbatten-Windsor affirmed the assessment of Dr. Lateef and likewise found that Plaintiff was not disabled because she could perform light work, including her past relevant work as a general duty nurse as it was actually performed. R. 314-324.

On May 14 and June 11, 2019, Plaintiff visited Valley Health to receive a cervical nerve blocks on C7 nerve root. R. 716.

On June 25, 2019, Plaintiff visited Mountain State Psychological Services, PLLC for a diagnostic interview to assess her current level of functioning in order to form a diagnostic impression. R. 754. The diagnoses of major depressive disorder, recurrent, moderate, F33.1 (ICD-10) and unspecified anxiety disorder, F41.9 (ICD-10) were given based on the available information in the assessment. R. 757. Weekly therapeutic services, individual psychotherapy, were suggested and established based on Plaintiff's symptomatology and diagnostic impression. R. 759-771.

On July 26, 2019, Plaintiff visited Valley Health to receive an interarticular steroid injection in her right shoulder. R. 751. On August 5, August 28, and September 30, 2019, Plaintiff visited Valley Health to receive cervical nerve blocks on the right C6 and C7. R. 126-127; 133-134.

On September 10, 2019, Dr. Preeti Panchang reviewed Plaintiff's cervical spine imaging. R. 135-149. Dr. Panchang commented Plaintiff had "full active range of motion of the right

shoulder." R. 146. Dr. Panchang also commented that "[n]o improvement noted with conservative management including cortisone injection." R. 149.

On September 21, 2019, Plaintiff underwent an MRI on her right shoulder without contrast. The final results, reported by Dr. Panchang, were reported on October 22, 2019. Dr. Panchang found "rotator cuff tendinopathy with moderate partial thickness articular surface tear of the distal supraspinatus. No full-thickness gap, myotendinous retraction, or muscle atrophy" and "mild irregularity of the anterior-superior labrum, suggesting fraying/type I SLAP lesion." R. 186.

On February 10, 2020, Dr. Michael Rezaian board-certified arthritis and rheumatology specialist submitted a letter on behalf of Plaintiff stating that Plaintiff is under his care and Plaintiff has all of the eighteen (18) tender points for fibromyalgia. R. 25.

### D. Vocational Evidence

Andrew Caporale, a vocational expert ("VE"), testified by telephone at the ALJ hearing held on October 31, 2019 in Richmond, Virginia. R. 225-235.

The ALJ gave Mr. Caporale the first hypothetical situation to analyze as follows:

> Q:      For my first hypothetical, assume a person of the claimant's age, education, and work experience with the residual functional capacity to perform light work. The hypothetical individual is able to occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, never ladders, ropes, and scaffolds. They have no more than occasional exposure to extreme cold, vibration, fumes, dusts, gases, poor ventilation, and must avoid all exposure to height and hazards. Would such a hypothetical individual be able to perform the claimant's past work?
>
> A:      The hypothetical individual could perform the past work as it was actually performed but not as it was generally performed.
>
> [. . .]
>
> With respect to transferability, they could function as a school nurse. [ . . . ] DOT number 075.125-010. That's light. That's an SVP of 7 also. It's skilled. There are about 180,000 in the US economy. Or they could work as an office nurse, DOT number is 075.374-014. That's light. It's skilled. The SVP is 7. There are over 225,000 of those nurses in the

US economy. They could also work as what is called a staff nurse, occupational health nursing. DOT number is 075.372-022 which is light, skilled. The SVP is 7. There used to be a lot more, but there are about 62,000 of those currently in the US economy. They're all occupations that transfer from the skills of the general duty nurse.

Q:      [P]lease describe those transferable skills for the record.

A:      [B]eing able to apply technical knowledge, common sense, and then there's special medical skills to care for or treat sick individuals, basically using their eyes, hands, and fingers skillfully, being able to adapt quickly to emergency situations, keeping accurate records, distinguishing shapes and colors. They are skills associated with a general duty nurse that transfer.

R. 227-228. The ALJ then gave Mr. Caporale a second hypothetical situation to analyze as follows:

Q:      [A]ssume a person of the claimant's age, education, and work experience with the residual functional capacity indicated in hypothetical #1, except the hypothetical individual is able to concentrate, persist, and maintain pace to complete tasks that do not require stringent production rate pace or fast pace, meaning fast pace. Would such a hypothetical individual be able to perform the claimant's past work?

A:      Well, it's not a production pace, but it is a fast pace. Based on that information or based on that hypothetical, probably would not be able to do their past work.

Q:      Are there any other jobs such a hypothetical individual would be able to perform?

A:      [T]he occupations that I enumerated based on transferable skills, they would not require a fast pace operation, and they would basically remain within that hypothetical.

R. 229. The ALJ posed a third hypothetical situation for Mr. Caporale to analyze as

follows.

Q:      [A]ssume a person of the claimaint's age, education, and work experience with the residual functional capacity as indicated in hypothetical #2, but in addition, the hypothetical individual is able to occasionally reach, handle, and finger bilaterally. [ . . . ] Are there any other jobs such a hypothetical individual would be able to perform.

A:      [T]here are, and transferability of course doesn't apply because, within the RFC, there are no transferable skills for the duties of a general nurse, but

the hypothetical individual, for instance, would still be ale to function as what is called a bakery worker conveyer line [. . .] DOT # 524.687-022. That's light. That is unskilled. It doesn't require more than occasional reaching, handling, and fingering. [. . . ] They could function as what is called a counter clerk. Counter clerk has a DOT number of 249.366-010, and that's light, It is unskilled. The SVP is 2. Though there used to be a lot more, there are about 24,000 jobs in that occupation that remain nationally, but basically, they would be the only two full-time types of occupations that would remain at the light exertional level.

Q:      If you add to hypotheticals one, two or three that the hypothetical individual will be off task 15% of the day and/or miss work, leave early, or arrive late two days per month, would the jobs remain?

A:      They would not, Your Honor. Actually, 15% off task is the cutoff. Based on wage analysis calculations for determining piece rate, allows for nine minutes of downtime per hour which equates, again to 15%, but anything more than that, you're not capable of competitive employment, and two days absent per month actually exceeds the average 1.3 days per month that is tolerated by an employer.   [ . . . ] So if there's more than 15%, you're not employable off task, and if you're more missing more than 1.3 days per month on a consistent basis, not employable, No, that hypothetical individual is not employable.

R. 229-231.

On cross-examination by Plaintiff's attorney, Mr. Caporale testified regarding Plaintiff's

past work as follows:

Q:      Mr. Caporale, the claimant testified in her past work that she was required to move people around, patients in particular. Is that consistent, that description of how her job was performed, consistent with it being performed at the light level?

A:      Well, the reason – usually that's not consistent, but the record indicates that lifting  was no more than 20 pounds on an occasional basis or maximally. So that's why I stated that she actually performed it at the light exertional level. It was based on her description. [. . .] Typically, that's you know, if you're moving patients, you're exceeding 20 pounds lifting. So that didn't make a whole lot of sense to me, but I can only base it on what I reviewed.

Q:      Okay. So if there is some possibility that she maybe did not understand what she was indicated on the form but indeed was moving patients around, would her past work be available at any of the hypotheticals that were presented?

A:     It would not be if the moving of the patients is more than 20 pounds.

Q:     . . . And if an individual needed unscheduled breaks that exceeded those of normal breaks and lunch breaks in order to deal with migraines or pain management, would that be something an employer would accommodate?

A:     No, it's not.

R. 231-232. The ALJ then posed additional questions to vocational expert Mr. Caporale as follows:

Q:     To the extent that the person would be off task for a particular period?

A:     Typically, they would not accommodate that, but I have worked with employers for 20-some years and, you know, additional breaks are not provided in a work environment without a significant accommodation which is usually not so granted.

[ . . . ]

Q:     And I just want to be clear. Even if that past relevant work was medium as performed and per the DOT, the transferable skills remain the same as well as the occupations you described at hypothetical #1, is that correct?

A:     That is correct.

R. 232-234.

### III.    THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (2006). The Social Security Administration uses the following five-step sequential evaluation process to determine if a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

[Before the fourth step, the residual functioning capacity of the claimant is evaluated based "on all the relevant medical and other evidence in your case record . . ." 20 C.F.R. §§ 404.1520; 416.920 (2011).]

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520; 416.920 (2011). If the claimant is determined to be disabled or not disabled

at one of the five steps, the process does not proceed to the next step. Id.

## IV.   ADMINISTRATIVE LAW JUDGE'S DECISION

Utilizing the five-step sequential evaluation process described above, the ALJ made the

following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since February 12, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)

3. The claimant has the following severe impairments: degenerative disc disease of the spine, fibromyalgia, obesity, inflammatory arthritis also diagnosed as rheumatoid arthritis, and psoriatic arthritis (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functioning capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; no more than occasional exposure to extreme cold, vibration, fumes, odor, dusts, gases, and poor ventilation; and no exposure to heights and hazards.

6. The claimant is capable of performing past relevant work as a general duty nurse, DOT# 075.364-010, generally performed at the medium exertional level but actually performed at the light exertional level with a specific vocational preparation ("SVP") code of 7. This work, as actually performed, does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 12, 2018, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

R. 84-99.

## V. DISCUSSION

### A. Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th

Cir. 1984) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1968)). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case. <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1157, 203 L. Ed. 2d 504 (2019); <i>see also</i> <u>Sizemore v. Berryhill</u>, 878 F.3d 72, 80-81 (4th Cir. 2017). However, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment…if the decision is supported by substantial evidence." <u>Hays</u>, 907 F.2d at 1456 (citing <u>Laws</u>, 368 F.2d at 642; <u>Snyder v. Ribicoff</u>, 307 F.2d 518, 529 (4th Cir. 1962)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).

### B. Written Contention of the Parties

Plaintiff, in her Motion for Summary Judgment, asserts the ALJ erred by (1) failing "to include mental limitations she found credible in her residual functional capacity and hypothetical question to the vocational expert[,]" ECF No. 21 at 1; (2) finding that Plaintiff's "past relevant work was light as actually performed, when it was medium as actually performed" and Plaintiff was "limited to light work[,]" <u>Id</u>.; and (3) making numerous significant legal errors in evaluating the medical evidence of record, <u>Id</u>..

Defendant, in her Motion for Summary Judgment, asserts that the decision is "supported by substantial evidence and should be affirmed as a matter of law." Def.'s Motion, ECF No. 22 at 1. Defendant asserts the substantial evidence supports the ALJ's finding that Plaintiff's "mild" mental limitations did not inhibit her ability to work, the finding that Plaintiff could perform her past relevant work as actually performed, and all other findings upon which the ALJ's decision is grounded.

In her Response, Plaintiff reiterates that remand is required in this case because the ALJ failed to include mental limitations she found credible in her RFC and hypothetical questions to the vocational expert, erred in finding that Plaintiff's past relevant work was performed at the light exertional level, and made significant legal errors in evaluating the medical evidence of record.

## C.   Oral Arguments of the Parties

On November 19, 2021, the parties, by counsel,[5] presented limited oral arguments to the Court on the following two issues: (1) whether the ALJ erred by failing to include Plaintiff's mental limitations, which she found credible, into her residual functional capacity assessment and hypothetical questions to the vocational expert; and (2) whether the ALJ erred in finding that Plaintiff's past relevant work was performed at a light exertional level and, if so, whether that error was nonetheless harmless considering the ALJ's alternative step 5 finding. *See* ECF No. 24, 27, and 29.

First, counsel for the Plaintiff noted generally, that if there are alleged mental impairments, before the ALJ renders an RFC determination, the ALJ must undergo a psychiatric review technique ("PRT"); here, the ALJ did so and found the Plaintiff in this case had mild mental limitations. Counsel for the Plaintiff further noted that here, Plaintiff is not arguing for a categorical rule, but rather, a case-by-case basis analysis, following Mascio and Shinaberry,[6] that requires an ALJ to either (a) put forth a functional analysis considering all credible mental limitations for the purposes of the RFC or (b) otherwise provide a well-reasoned explanation why the ALJ is not doing so. Counsel for the Plaintiff noted that recent Fourth Circuit precedent requires ALJs to

---

[5] Robert W. Gillikin, II appeared and argued as counsel on behalf on Plaintiff Debra K. Long. M. Jared Littman appeared and argued as counsel on behalf on the Commissioner of Social Security. Erin K. Reisenweber also appeared to observe the proceedings also on behalf of the Commissioner of Social Security.

[6] *See*, *e.g.*, Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) and Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020).

"show their work,"[7] and, further noted, that if there are gaps in the ALJ's decision, it is not the role of the reviewing court to fill in the gaps, but rather, the reviewing court must remand.

Counsel for the Commissioner argued that there is substantial evidence here to support the exclusion of the mild mental limitations from the RFC, and, thus, the Commissioner must prevail. Moreover, counsel for the Commissioner emphasized that the "mild" means Plaintiff is "slightly limited," and a mild limitation at step two does not inherently require an associated work-related limitation in the RFC, considering an RFC is the most a claimant can do. Counsel for the Commissioner argued that the ALJ made statements in the RFC which give insight into why the mild, credible limitations found at step two did not merit a limitation in the RFC: "the record fails to show any mention of distractibility," R. 91, claimant is "able to drive, prepare meals, watch television, manage funds, and handle her own medical care," R. 90, and "generally appeared alert." R. 96. Counsel for the Commissioner also argued there is also evidence in the record supporting the RFC Assessment on distractibility: the claimant could concentrate for two or more hours, R. 424, and claimant followed instructions well and had no issues with memory or concentration. R. 424. Counsel for the Commissioner argued that even if the RFC is lacking, any error here is harmless, considering the VE's testimony. Counsel for the Commissioner noted that the ALJ asked the VE if the ALJ limited options to jobs that are not fast paced, it doesn't impact the availability of jobs here, and further, that the VE noted that workers are allowed up to 15% of down time in the workday. R. 226. Counsel for the Commissioner argued that Plaintiff's mild mental limitations

---

[7] *See* Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017)("[T]he dispute here arises from a problem that has become all too common among administrative decisions challenged in this court— a problem decision makers could avoid by following the admonition they have no doubt heard since their grade-school math classes: Show your work. The ALJ did not do so here, and this error rendered his decision unreviewable.").

have no impact on her ability to perform full-time work and, counsel reiterated that even if there was an error here, there is no basis for remand as such an error is harmless.

Counsel for Plaintiff responded that the Commissioner's citations to record evidence supporting the alleged mildness of claimant's mental limitations, while informative, is of no moment; counsel for the Plaintiff asserted it is not the role of the Court to ponder a justification as to why there were no mental limitations in the RFC – that was the role of the ALJ, and the justification needs to be found in the four corners of the ALJ's decision. Counsel for the Plaintiff postured that this would be a very different case if the ALJ wrote a paragraph in her decision stating why, despite finding credible, mild mental limitations in the PRT analysis, those mild, mental limitations didn't translate into the RFC as required in <u>Shinaberry</u>.[8] Counsel for the Plaintiff stated that remand is appropriate here because of the ALJ's lack of RFC analysis regarding Plaintiff's credible, mental limitations, and counsel for the Plaintiff respectfully requested this Court grant the Plaintiff's Motion and remand this matter.

Counsel for the Commissioner responded that paragraphs upon paragraphs of explanations are not required for a proper ALJ decision, but rather, all that is required is enough of a reasonable, discernable path or explanation as to allow for meaningful review. Counsel for the Commissioner asserted that, here, there is more than enough to show that despite Plaintiff's credible, mild mental limitations, those limitations didn't warrant limitations in the RFC.

Second, counsel for the Plaintiff noted that while three alternative jobs were considered by the ALJ in step four as jobs with transferrable skills, school nurse, office nurse, and staff nurse, R. 98, there was *not* an alternative step five finding regarding available unskilled jobs made in this case.

---

[8] <u>Shinaberry v. Saul</u>, 952 F.3d 113, 121 (4th Cir. 2020).

Counsel for the Plaintiff stated that *if* there had an alternative step five finding, he would readily concede that the erroneous classification of Plaintiff's past relevant work as light instead of the medium exertional level was a harmless error. However, counsel for the Plaintiff reiterated there was no step five finding here, thus, any error cannot be considered harmless.

Counsel for the Plaintiff noted as an aside that Plaintiff was within six months of fifty-five at the time of adjudication, and, thus, the ALJ should have applied a non-mechanical application of Grid 202.06 when evaluating the availability of unskilled work to Plaintiff. The Court would note that Grid 202.06 states a claimant with advanced age, high school education or more that does not provide for direct entry into skilled work and whose prior work skills are not transferable is found disabled under Grid 202.06. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 202.06. Counsel for Plaintiff argued moreover that the step four analysis is tainted by a faulty RFC, which did not include the Plaintiff's credible mental limitations, and therefore, remand is appropriate to address both issues.

Counsel for the Commissioner responded that, regardless if done at step four or step five of the analysis, the VE identified other light duty jobs which would be available and which conform with Plaintiff's RFC. Counsel for the Commissioner noted that the ALJ did ask the VE, R. 230, about other unskilled work – conveyer line bakery worker and counter clerk - which conforms with the RFC. Counsel for the Commissioner argued that any error in the step four analysis is harmless where a step five analysis was essentially performed as both alternative transferrable nursing jobs conforming with the RFC and unskilled jobs existing in substantial numbers in the national economy and conforming with the RFC were identified by the VE.

Importantly, counsel for the Commissioner *conceded* at oral arguments that the ALJ erred because the ALJ classified Plaintiff's past relevant work as light when Plaintiff's past relevant

work was medium as actually performed and, *further conceded* that Plaintiff could no longer perform her past relevant work. Counsel for the Commissioner explained that the ALJ likely erroneously characterized the past relevant work as light based upon Plaintiff's form submissions where she stated in short form that she lifted no more than twenty pounds as part of her work but then in the comments stated she lifted patients. *See* R. 398 and 410. Counsel for the Commissioner reiterated that, regardless, the ALJ found that there was other light duty work available to the Plaintiff which would not require lifting more than twenty pounds or lifting patients as the general duty nurse would, and thus, this was a harmless error.

Counsel for the Plaintiff reiterated that opposing counsel's concession that Plaintiff's past relevant work as a general duty nurse, per the DOT description and as she actually performed it, was at the medium exertional level confirms that all parties are in agreement that the ALJ's step four finding was in error. Counsel for the Commissioner confirmed the same.

### D.  Analysis of the Administrative Law Judge's Decision

### 1.  The ALJ erred by failing to assess Plaintiff's capacity to perform relevant work functions considering her credible mental limitations. Because this failure frustrates meaningful review, remand is recommended.

A claimant's residual functional capacity ("RFC") is the "most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545. Social Security Ruling 96–8p provides the process for assessing a claimant's RFC. When assessing a claimant's RFC, an ALJ must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)(quoting SSR 96-8p, 61 Fed.Reg. at 34,4474-01). The ALJ must "consider [the claimants] ability to meet the physical, mental, sensory, and other requirements of work."   20 C.F.R. § 416.945(a)(4).  This includes "all . . . medically determinable impairments of which [the ALJ is] are aware, including . . . medically determinable impairments that are not "severe[.]" 20 C.F.R. §

416.945(a)(2). The RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." <u>Mascio</u>, 780 F.3d at 636. (quoting SSR 96-8p, 61 Fed. Reg. at 34,474-01).

Failing to consider all of an individual's functional capacities to support an RFC assessment based on an exertional category creates the danger that the adjudicator will "either overlook the limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." <u>Id</u>. (quoting SSR 96-8p, 61 Fed. Reg. at 34,4474-01).  Remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." <u>Monroe</u>, 826 F.3d at 188 (emphasis added) (quoting <u>Mascio</u>, 780 F.3d at 636). The reviewing court must first determine whether the ALJ failed to assess Plaintiff's capacity to perform relevant functions. <u>See id</u>. If so, the court must then determine whether the ALJ's failure frustrates meaningful review because of contradictory evidence or other inadequacies in the record. <u>See id</u>.

In <u>Shank v. Saul</u>, the U.S. District Court for the Southern District of West Virginia recently remanded where an ALJ concluded at step two of the sequential evaluation that the claimant had mild mental limitations in adapting or managing himself but the ALJ failed to evaluate claimant's mental functional abilities or provide any insight into why he did not assess any mental RFC restrictions. <u>Shank v. Saul</u>, No. 3:20-CV-00444, 2021 WL 2767063, at *8 (S.D.W. Va. June 11, 2021)(Eifert, J.), *report and recommendation adopted*, No. CV 3:20-0444, 2021 WL 2744550 (S.D.W. Va. July 1, 2021)(Chambers, J.). The court "appreciate[d] that the record primarily

concern[ed] Claimant's physical impairments." <u>Shank</u>, 2021 WL 2767063, at *9. However, the court explained that remand was necessary as "the evidence [wa]s not so one-sided that the Court can affirm the Commissioner's decision without improperly fill[] in the blanks for the ALJ" and "[t]he boilerplate statement that the RFC assessment reflects the degree of limitation that the ALJ found in the 'paragraph B' mental function analysis is an insufficient substitute for substantive analysis, and it does not provide the level of articulation necessary for meaningful review." <u>Id</u>.

Here, the ALJ found at step two of the sequential evaluation that Plaintiff Long had mild limitations in understanding, remembering, and applying information; concentrating, persisting, or maintaining pace; adapting or managing herself; and interacting with others. R. 90-91. Plaintiff argues that the ALJ failed to adequately reflect the Plaintiff's credible mental limitations into the hypotheticals posed to the vocational expert or into her RFC. Defendant responds that the ALJ found Plaintiff's limitations *de minimis*, and, thus, "reasonably omitted mental limitations [from the RFC] because her mild deficiencies were so slight[,] and they would not affect her ability to fully function in a work setting." ECF No. 22-1 at 10. Plaintiff replies that an ALJ must include all limitations she finds credible in her RFC, even if such limitations come from non-severe impairments and fail to significantly impact claimant's ability to work. ECF No. 23 at 3.

Here, like in <u>Shank</u>, the undersigned finds that the ALJ failed to assess Plaintiff's capacity to perform relevant functions, and this failure frustrates meaningful review considering the inadequacies in the record. While the ALJ did pose questions related to work pace, excess breaks, and time spent off task due to pain and migraines, the ALJ did not incorporate into the vocational hypotheticals an inquiry regarding the mental requirements of the proposed skilled work, nor did the ALJ include into the RFC a discussion of how record evidence supports Plaintiff's ability to meet the mental and sensory requirements of such work. <u>See</u> 20 C.F.R. § 416.945(a)(4). Plaintiff

testified during the hearing about her concerns regarding her distractibility and ability to satisfy the mental and sensory requirements of the work. R. 221 ("I was so concerned that I was going to make a mistake being so distracted by my pain, that I would make a mistake with medications or some kind of error with my patients."); R. 224 ("I don't want to harm anybody being distracted."). There is also evidence in the record regarding Plaintiff's migraines which cause her to lose "an entire day at least once a week due to being in a dark room for migraine management." R. 223.

The ALJ found Plaintiff was able to perform her past skilled SVP 7 work as a general duty nurse as it was actually performed, or transferrable work as a school or staff nurse, without a functional analysis of the mental and sensory requirements of such work or how Plaintiff's credible, albeit mild, mental limitations may impact her ability to work. The ALJ herself describes that "[t]he residual functional capacity assessment at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment[,]" R. 91; however, the ALJ failed to perform that more detailed assessment. As a result, the undersigned is "left to guess about how the ALJ arrived at [her] conclusions on Plaintiff's ability to perform relevant functions." Mascio, 780 F.3d at 637. See also Defendant's Brief, ECF No. 11 (Plaintiff "can only speculate that her mild mental limitations 'could have had a significant impact' on her ability to work."). Consequently, the undersigned finds the ALJ erred in failing to include Plaintiff's mental limitations in her RFC findings, and that this error frustrates meaningful review.

Accordingly, the undersigned **FINDS** that the ALJ's decision is not supported by substantial evidence and remand is appropriate so the ALJ may consider all of Plaintiff's functional limitations and incorporate into her RFC an analysis of all limitations she finds credible. The undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this

case be **REMANDED** so that the ALJ may reexamine and elaborate upon her analysis of

Plaintiff's functional mental capacity for the purposes of a comprehensive RFC assessment.

**2. The parties agree the ALJ erred in finding Plaintiff's past relevant work as "light" as actually performed; the undersigned finds this error was not harmless.**

> *A. The ALJ erred here because Plaintiff's past relevant work was medium exertional level as actually performed, and Plaintiff could no longer perform her past relevant work.*

According to the Dictionary of Occupational Titles, a general duty nurse principally:

> Provides general nursing care to patients in hospital, nursing home, infirmary, or similar health care facility: Administers prescribed medications and treatments in accordance with approved nursing techniques. Prepares equipment and aids physician during treatments and examinations of patients. Observes patient, records significant conditions and reactions, and notifies supervisor or physician of patient's condition and reaction to drugs, treatments, and significant incidents. Takes temperature, pulse, blood pressure, and other vital signs to detect deviations from normal and assess condition of patient. May rotate among various clinical services of institution, such as obstetrics, surgery, orthopedics, outpatient and admitting, pediatrics, and psychiatry. May prepare rooms, sterile instruments, equipment and supplies, and hand items to . . . other medical practitioner[s]. May make beds, bathe, and feed patients. May serve as leader for group of personnel rendering nursing care to number of patients.

DICOT 075.364-010. The physical demand requirements "are in excess of those for Light Work."

Id. A general duty nurse must be capable of medium strength work:

> Exerting 20 to 50 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or 10 to 25 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or greater than negligible up to 10 pounds of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects.

Id. To contrast, the work of a school nurse, office nurse or staff nurse in an occupational health

setting each require only light work, that is: exerting up to twenty pounds of force occasionally;

ten pounds of force frequently; or a negligible amount of force constantly; walking or standing to

a significant degree; or sitting most of the time, but pushing and/or pulling of arm or leg controls;

or working at a production rate pace entailing the constant pushing and/or pulling of materials even

though the weight of those materials is negligible. *See* DICOT 075.124-010 (school nurse); DICOT 075.374-014 (office nurse); DICOT 075.374-022 (staff nurse, occupational health setting).

Here, the ALJ found that Plaintiff "has the residual functioning capacity to perform light work" and that Plaintiff "is capable of performing past relevant work as a general duty nurse, DOT# 075.364-010, generally performed at the medium exertional level but actually performed at the light exertional level with a specific vocational preparation ("SVP") code of 7." R. 97.  The ALJ additionally found that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform, considering the claimant's age, education, work experience, transferable skills, and residual functional capacity[.]" R. 97. Specifically, the ALJ concluded that Plaintiff "has acquired work skills from past relevant work that are transferable to other occupations . . . The vocational expert testified the claimant acquired transferable skills including applying technical knowledge/medical knowledge to care for an[d] treat [patients] as well as adapt to emergency situations." R. 98.

As an initial matter, the undersigned would note that, as determined on the record at oral arguments, the parties now agree that the ALJ erred in finding Plaintiff's past relevant work to be of light exertional level as actually performed, where there is substantial evidence throughout the record that the Plaintiff's prior work required work at the medium exertional level, including the lifting of patients.

As stated above, the undersigned recommends remand in this case because the ALJ failed to assess Plaintiff's credible mental limitations in the RFC, and this failure frustrates meaningful review of the ALJ's decision. However, for completeness, the undersigned has reviewed the record, to the extent possible, and finds the parties' conclusion to be correct – there is not

substantial evidence to support the ALJ's finding that Plaintiff's past relevant work as a general duty nurse was light exertional work as it was actually performed.

First, on her Work History Report, Form SSA-3369, and Disability Report, Form SSA-3368, Plaintiff reported that in her prior work at the nursing home, she lifted "pts[,]" presumably patients, lifted portable oxygen tanks, and brought clothes to the residents. R. 398 and 410. She explained her "upper body strength is weak which limited lifting, reaching, and my hand use." R. 442. Notably, Plaintiff discussed her duties as a nurse, as actually performed, in her two separate Function Reports prior to her testimony at her hearing. R. 419 and R. 437. In the first Function Report, completed on July 15, 2018, Plaintiff wrote "I am a nurse and fear that my weakness may result in me dropping a patient." R. 419. Plaintiff wrote in the second Function Report, completed December 16, 2018, her illness, injuries, and conditions limited her ability to work because the "[d]ecreased upper body strength limits my ability to safely perform my duties as a nurse of lifting, transferring, and repositioning of patients." R. 437. However, throughout the record, Plaintiff also, including within the Functional Reports where she discusses lifting patients, Plaintiff lists twenty pounds as the weight she generally lifts in the workplace. R. 285, 287, 297.

Plaintiff's testimony asserted she can only comfortably and safely pick up and move ten pounds. R. 222, 224. Plaintiff specifically testified that "I don't want to harm anybody being distracted. I also – nursing required to lift. I wouldn't be able to list a patient, even with assistance. Like I said, I could probably lift ten pounds, even with somebody helping me. That's not going to lift somebody." R. 224.

Despite the ALJ's finding that Plaintiff's testimony changed at the hearing level, there are multiple points of evidence in the record that Plaintiff's job, as performed, required her to engage in the lifting of patients. R. 398, 410, 419, 437. The job description as articulated in the Dictionary

of Occupational Titles and as described by the VE supports the evidence in the record that movement of patients was the standard for Plaintiff in the position of general duty nurse as actually performed. At the hearing, the VE noted the inconsistencies and the fact that evidence in the record that twenty pounds as Plaintiff' regular lifting load made very little sense. R. 231, ("Typically, that's you know, if you're moving patients, you're exceeding 20 pounds lifting. So that didn't make a whole lot of sense to me, but I can only base it on what I reviewed.").

Again, substantial evidence requires only "'more than a mere scintilla," only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. at 229 (1938)). Upon review, there is no evidence in the record for a reasonable mind to accept as adequate to support the conclusion that Plaintiff's job as a general duty nurse, as actually performed, did not require medium strength work where she was required, as repeatedly reflected in the record, to lift patients. Again, it was conceded at oral arguments by counsel for the Commissioner that the ALJ erred in finding the past relevant work as light exertional duty when it was, in fact, medium duty work per the DOT regulations and as actually performed. With the parties in agreement as to the ALJ's error, the only remaining question is whether the error was harmless.

> B. *This error was not harmless because the ALJ failed to perform a Step Five Analysis, and the ALJ assessment of Plaintiff's borderline age situation is tainted by the ALJ's errors.*
>> i. Step Five Analysis

At the fourth step of the sequential evaluation process, the ALJ must "compare [the] residual functional capacity assessment ... with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 416.920(f). If the ALJ determines that the claimant can still do that kind of work, then the claimant is not disabled. Generally, where there is a determination that

a claimant can perform a significant range of past relevant work, there is no analysis of step five of the sequential evaluation process. 20 C.F.R. §§ 404.1520; 404.1560

On the other hand, if the ALJ finds that the claimant cannot do her past relevant work, or if the claimant has no past relevant work, then the ALJ proceeds to step five and determines whether the claimant can perform any other work considering the claimant's RFC and other vocational factors, such as age, education, and work experience. 20 C.F.R. § 416.920(g). *See also* Schartiger v. Colvin, No. 5:13CV71, 2014 WL 1054241, at *36 (N.D.W. Va. Mar. 18, 2014).

Here, the parties agree that the ALJ erred in finding the Plaintiff could perform her past relevant work because it was medium as it was actually performed, and Plaintiff could not lift more than twenty pounds. *See* infra at 23-24. Accordingly, where Plaintiff cannot do her past relevant work, an ALJ should have proceeded to perform a step five analysis and determine whether she can perform any other work considering her RFC and other vocational factors, such as age, education, and work experience. In the instant case, a step five analysis was not performed. Despite Defendant's present arguments that an alternative step five finding can be found in the VE testimony regarding the jobs of bakery worker conveyer line or counter clerk or that evidence in the record can be construed to support an alternative step five finding, the four corners of the ALJ's opinion did not include an alternative step five finding and it is not the job of this Court to guess or reconstruct how the ALJ arrived at her decision. Mascio, 780 F.3d at 637. Furthermore, as previously described, where the RFC failed to consider Plaintiff's credible, mental limitations, any alternative step five finding would have nonetheless need to be reconsidered on remand. Based upon the ALJ's failure to make an alternative step five finding, and with other, aforementioned issues within the RFC, the undersigned finds the ALJ's error at step four not to be harmless.

ii.   <u>Borderline Age Analysis</u>

The impact of the error was that the ALJ's analysis of Plaintiff's borderline age situation, whether to apply the older age category or proceed based on Plaintiff's chronological age, is tainted by both the error regarding Plaintiff's past relevant work experience as it was actually performed and regarding the RFC and Plaintiff's credible, mental limitations. Thus, the undersigned finds the ALJ's step four error not to be harmless.

In determining a claimant's age, the Regulations establish three chronological age categories: (1) younger person (under age 50); (2) person closely approaching advanced age (age 50–54); (3) person of advanced age (age 60 or older). 20 C.F.R. § 404.1563(c)-(e). However, in a borderline age situation, the Regulations also provide that the ALJ "will not apply the age categories mechanically in a borderline situation," but will instead "consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." 20 C.F.R. § 404.1563(b). *See also* <u>Ash v. Colvin</u>, No. 2:13-CV-47, 2014 WL 1806771, at *6 (N.D.W. Va. May 7, 2014)(Bailey, J.).

Generally, claimants who are within six months from the next age category are considered borderline. <u>Ash</u>, No. 2:13-CV-47, 2014 WL 1806771, at *6 (N.D.W. Va. May 7, 2014)(Bailey, J.); *see*, *e.g.* <u>Barrett v. Apfel</u>, 40 F.Supp.2d 31, 39 (D.Mass.1999) (collecting cases holding that up to 6 months can qualify); <u>Roush v. Heckler</u>, 632 F.Supp. 710 (S.D.Ohio 1985) (6 months was borderline case); <u>Bush v. Astrue</u>, 2008 WL 867941, at *5–6 (S.D.W.Va. Mar. 28, 2008) (collecting cases). In such borderline situations, the ALJ must consider whether to use the older age category or proceed by using the claimant's chronological age for the analysis. <u>Lockwood v. Comm'r</u>, 616 F.3d 1068 (9th Cir.2010) (finding that "the ALJ satisfied the requirement that she consider whether

to use the older age category"); <u>Van Der Maas v. Comm'r</u>, 198 Fed.Appx. 521 (6th Cir.2006)
(same).

     Here, plaintiff Debra K. Long was born on February 16, 1965, and, thus, at nearly fifty-
three (53) years old, she was an individual closely approaching advanced age on the alleged
disability onset date of February 12, 2018. On the date of the ALJ's issued decision, December 2,
2019, Plaintiff was fifty-four years, nine and a half months old, just two and a half months shy of
being a "person of advanced age" (age 55 or older).

In her opinion, the ALJ wrote:

> Although a borderline age situation exists because the claimant is within a few days
> to a few months of attaining the next higher age category ***and use of the higher age
> category would result in a finding of "disabled" instead of "not disabled",*** use of
> this age category is not supported by the limited adverse impact of all factors on
> the claimant's ability to adjust to other work. The claimant has a high school
> education and she worked until 2018 in skilled positions which are  quite common
> and exist in large numbers throughout the country.  Further, she will not attain
> advanced age for nearly three months.   Considering all these factors, the
> undersigned finds that overall impact of the ***claimant's residual functional
> capacity*** combined with her age, education, and ***work experience***, does not justify
> using the higher age category.

R. 97 (emphasis added).

     Here, the ALJ's decision not to apply the higher age category resulted in a finding of "not
disabled" instead of a finding of "disabled." While the ALJ underwent the required consideration
of whether to use the older age category, her decision not to apply the higher age category was
based partially on an RFC assessment which the undersigned has previously found herein to be
lacking. *See infra* at 20-21. Additionally, the ALJ partially based her decision not to apply the
higher age category on the ALJ's assessment of Plaintiff's work history, which the parties concede
and the undersigned has also previously found also to be in error. It follows that the ALJ
subsequent borderline age analysis is questionable at best where it was based on the two

aforementioned erroneous analyses. The undersigned finds that these errors were not harmless where they could have a serious impact on the ALJ's consideration of whether to use a higher age category for a nonmechanical GRID application. The undersigned recommends that, upon remand, the ALJ reconsider whether to use the older age category for Plaintiff or proceed by using the claimant's chronological age after considering her past work experience and the new RFC finds.

For the reasons stated above, the undersigned **FINDS** that the ALJ's finding that Plaintiff's past relevant work was light as actually performed is not supported by substantial evidence where the record clearly reflects that Plaintiff performed work at the medium exertional level. The VE highlighted that inconsistency at the hearing, and the parties agree upon and concede the same. The undersigned further **FINDS** that this error is not harmless where this error likewise impacts the ALJ's assessment of the borderline age situation and whether the Plaintiff should be considered under an older age category under a non-mechanical application and considered disabled under the Grid or to perform a step five analysis, whether Plaintiff may be capable of performing unskilled work in the national economy. **UPON REMAND**, for the reasons stated above, the ALJ should assess (1) in the RFC, whether the Plaintiff, despite her credible mental limitations has the capability to perform the mental and sensory aspects of any proposed work and (2) whether Plaintiff, who is in a borderline age situation, should be considered of a higher age category for the purposes of a non-mechanical GRID application, and whether she is disabled where she can no longer perform her past relevant work which was medium as listed and as it was actually performed.

### 3. The undersigned finds no other legal errors in the ALJ's evaluation of medical evidence.

Plaintiff argues the ALJ erred by relying on outdated medial opinions, failing to develop the record as to Plaintiff's mental impairment, and finding Plaintiff's shoulder and mental

impairment to be not severe. Defendant argues Plaintiff is, in actuality, challenging ALJ's fact-finding, and there is substantial evidence to support each of the challenged decisions. The undersigned agrees with the Defendant-Commissioner's position, and for the reasons set forth below, finds no legal errors and finds there is substantial evidence to support each of the challenged decisions.

### A. *Reliance on 2018 Medical Opinions*

First, Plaintiff argues the ALJ made a legal error by relying on the 2018 opinions of state agency physicians who rendered their opinions prior to the entry of the majority of evidence of record. Plaintiff argues the implications are that the state agency doctors reviewed very little evidence of record, including limited evidence regarding the efficacy of treatment, and the ALJ relied upon her own lay judgment in evaluating the majority of the medical evidence of record. Defendant argues that the gap in time between the doctors' opinions and the ALJ's opinion is a short period of one year and, further, that the ALJ considered all subsequent medical evidence in assessing the persuasiveness of the opinions and in crafting the RFC.

An ALJ must "weigh and evaluate every medical opinion in the record." Monroe v. Comm'r of Soc. Sec., No. 1:14CV48, 2015 WL 4477712, at *7 (N. D. W. Va. July 22, 2015). In evaluating medical opinions, the ALJ must "go through the exercise of carefully balancing the evidence, assigning weights to the competing opinions ... and explaining the rationale for doing so." *See* Ebbert v. Berryhill, No. 1:17-CV-193, 2018 WL 5904507, at *7 (N.D.W. Va. Sept. 28, 2018), *report and recommendation adopted*, No. 1:17CV193, 2018 WL 5892364 (N.D.W. Va. Nov. 9, 2018) (quoting Smith v. Barnhart, 395 F. Supp. 2d 298, 307 (E.D.N.C. 2005)). That careful balancing necessarily requires that the ALJ explain why the "medical evidence in the record supports the opinions or how the opinions are consistent with the medical evidence." Id. (quoting

Buchanan v. Colvin, No. 1:14cv209, 2016 WL 485339, at *4 (W.D.N.C. Jan. 19, 2016). The following factors are considered in deciding how to weigh any medical opinion: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Social Security Ruling 96-2p specifically addresses the ALJ's duty of explanation when a treating source opinion is not given controlling weight and the ALJ's decision is a denial of benefits, stating that:

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The ALJ does not need to specifically list and address each factor in his decision, so long as sufficient reasons are given for the weight assigned to the treating source opinion. Ebbert, No. 1:17-CV-193, 2018 WL 5904507, at *7 (citing Pinson v. McMahon, 3:07-1056, 2009 WL 763553, at *10 (D.S.C. Mar. 19, 2009) (holding that the ALJ properly analyzed the treating source's opinion even though he did not list the five factors and specifically address each one).

Notably, an ALJ may rely on state agency medical opinions even though there is a delay between the formation of the medical opinion and the hearing. Id. (citing Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3rd Cir. 2011) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that in the opinion of the [ALJ] ... may change the State agency medical ... consultant's finding' ... is an

update to the report required.") and <u>Thomas v. Colvin</u>, No. 3:13-CV-56, 2014 WL 2892360, at *7 (N.D.W. Va. June 25, 2014)(Groh, J.)(adopting the <u>Chandler</u> court's rationale when concluding that a one year passage between the formation of the medical opinion and the hearing did not invalidate or otherwise undermine the medical opinion)).

Here, Plaintiff notes that two state agency physicians reviewed the evidence only through December 2018 at the latest, which is 10 months after the alleged onset date. R. 94, 288, 322. Plaintiff argues the state agency physicians did not review any medical evidence related to: Ms. Long's right shoulder impairment, R. 27-44, 45-48, 51, 62-78, 632-35, 637-40, 725-37; Ms. Long's cervical nerve blocks or epidural steroid injections, R. 121-27, 128-34, 157-70, 188-201, 711-17, 718-24; 2019 assessments of cervical pain and functional limitations by Valley Health Interventional Spine, R.. 617-24, 657-69, 698-710); treatment by Preeti Panchang, M.D., a specialist in physical medicine and rehabilitation R. 135-49, 171-87, 670-83, 738-52), or treatment by Michael Rezaian, M.D., R. 25, 831-34, 837-40, 841-45.

However, here, like in the <u>Chandler</u>, 667 F.3d at 361 (3rd Cir. 2011), and <u>Colvin</u>, No. 3:13-CV-56, 2014 WL 2892360, at *7 (N.D.W. Va. June 25, 2014)(Groh, J.), the fact that approximately one year and subsequent treatment has occurred between the creation of the reports and the hearing does not invalidate or otherwise undermine the opinions of the state agency doctors. Additionally, the ALJ did not conclude that any of the medical evidence received between the reports' submission and the hearing could change their opinion. *See* R. 94-96 ("The DDS medical consultants' opinions are generally consistent with and supported by the record, which supports light work with additional limitations . . . the undersigned finds these opinions persuasive . . . After considering the record, including the objective medical evidence, expert opinions, and subjective statements, the undersigned finds the claimant is limited to the degree found above.). Accordingly,

the undersigned finds no legal error occurred in the ALJ's reliance on the state agency doctors' opinions because there is substantial evidence in the record related to Plaintiff's shoulder impairment, arthritis, spinal stenosis, and fibromyalgia which supports the ALJ's decision to afford great weight to the state agency physicians' opinions.

   B.  *Development of Medical Record*

   Next, Plaintiff claims the ALJ committed an "egregious" error by failing to develop the medical record regarding Plaintiff's mental limitations, by not ordering a consultative examination, and by relying on her own lay judgment in assessing the records related to Plaintiff's mental impairments. ECF No. 21 at 12-13. Plaintiff asserts that the ALJ "never mentioned or evaluated the treatment records related to Ms. Long's mental impairments." ECF No. 21 at 13 (citing R. 87-9). Plaintiff challenges that her mental impairments were actually severe, not mild as the ALJ concluded. ECF No. 21 at 13-14.

   Defendant responds by arguing there is substantial evidence to support the ALJ's finding of Plaintiff's mental impairments as not severe and by arguing that that Plaintiff did not allege mental impairments were severe in the reports she submitted to the agency, R. 408, 419, and 429, did not mention the impairments at the hearing, R. 220-224, and did not contend her mental impairments were severe in her prehearing memorandum, R. 471. ECF No. 22-1 at 15. Thus, Defendant argues there was no duty to have an evaluation performed. Plaintiff's retorts that Defendant's arguments that this position is contrary to the SSA's own regulations which impose upon an ALJ a duty to fully consider and have a mental health professional evaluate Plaintiff's mental health impairments because evidence was received regarding Plaintiff's treatment for a mental health impairment. ECF No. 23 at 5.

An ALJ is required to consider all impairments the claimant says they have or about which she receives evidence. 20 C.F.R. §§ 404.1512(a), 416.912(a). The ALJ <u>may</u> order a consultative examination (1) when the agency "cannot get the information [it] needs from [the claimant's] medical sources," and (2) "to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim." 20 C.F.R. §§ 404.1519a, 416.919a.

The undersigned would note the ordering of a consultative exam is discretionary. Here, there was ample evidence in the record regarding the Plaintiff's anxiety and depression, and the ALJ properly considered that evidence in performing the PRT at step two. R. 90-91.

The undersigned's prior finding of inadequacies in the ALJ's decision is limited to the fact that the ALJ did not perform a functional analysis for the RFC of the Plaintiff's mental and sensory capacity to perform work. The issue here is not that there was insufficient evidence to support a determination or decision on the claims of mental impairment, but rather that the ALJ failed to properly "show her work" in the decision as to how Plaintiff's mental limitations translate into the workplace. Accordingly, undersigned finds the ALJ did not commit error by choosing not to order a consultative examination under these circumstances.

C. <u>Severity of Shoulder and Mental Impairments</u>

Plaintiff argues that the ALJ erred in finding the Plaintiff's shoulder bursitis to be not severe and in finding the Plaintiff's mental limitation to be not severe. Defendant argues that Plaintiff is challenging to the ALJ's fact-finding and "fall[s] far short of undermining the substantial evidence upon which the ALJ's decision is grounded." ECF No. 22-1 at 12.

An impairment is severe only if it significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1522(a), 416.922(a); *see also* 20 CFR §§ 404.1520 (a) and(c) and 416.920(a).

The ALJ found that Plaintiff's bursitis of the right shoulder was not severe in that the condition caused no more than minimally vocationally relevant limitations. R. 90. The ALJ likewise found that Plaintiff's medically determinable mental impairments were non-severe because they cause "no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities[.]" R. 91. The ALJ reasoned:

> With all of the listed conditions, the record reflects that they are well controlled with medication and appropriate treatment, presenting no evidence of residual abnormalities that have more than a minimal effect on the claimant's ability to perform work activities on a regular and continuing basis.

R. 90.

Plaintiff argues that there was insufficient explanation for the finding of Plaintiff's bursitis of the right shoulder as not severe and, thus, remand is required.  ECF No. 21 at 13. Plaintiff argues the state agency physicians did not review any medical evidence related to Ms. Long's right shoulder impairment, R. 27-44, 45-48, 51, 62-78, 632-35, 637-40, 725-37, related to Ms. Long's cervical nerve blocks or epidural steroid injections, R. 121-27, 128-34, 157-70, 188-201, 711-17, 718-24, related to assessments by the Valley Health Interventional Spine showing that Ms. Long's cervical pain continued to cause functional limitations in 2019, R. 617-24, 657-69, 698-710, related to treatment by Preeti Panchang, M.D., a specialist in physical medicine and rehabilitation R. 135-49, 171-87, 670-83, 738-52, or related to treatment by Michael Rezaian, M.D., R 25, 831-34, 837-40, 841-45.

Defendant astutely notes:

The ALJ discussed records throughout 2018 and 2019 showing that Long's upper extremities consistently showed "full 5/5" muscle strength with no evidence of instability, "functional" and "full" range of motion, and "intact" sensation (R. #93-95; see, e.g., R. #510, 518, 522, 571, 577, 581, 620, 654). The record shows that in June 2019, Long reported to urgent care that she was experiencing right arm pain and was diagnosed with shoulder bursitis. But with the exception of some tenderness, Dr. Monseau's examination was unremarkable, revealing "normal" strength and full range of motion (R. #634). The x-ray was also normal (R. #636). Long followed up with Dr. Panchang, but her examination revealed 5/5 shoulder strength and "[f]ull active range of motion of the right shoulder" (R. #748). In addition to the medical exams, the ALJ also discussed that Long reported that she was able to bathe herself, prepare simple meals, drive short distances, and shop for groceries and personal items, among other activities (R. #96; see R. #214, 218-20, 421-22).

ECF No. 22-1 at 14. Defendant, thus, argues that the ALJ's determination that Plaintiff's shoulder bursitis is not severe is supported by substantial evidence and should not be disturbed by this Court.

Regarding her mental limitations, Plaintiff argues that the ALJ's decision is silent as to the treatment record related to Plaintiff's mental impairments and the lack of acknowledgement or further assessment requires remand. Defendant asserts:

[T]he ALJ properly found that they were not severe because the ALJ assessed Long with only mild limitations under all four "paragraph B" criteria (see supra at 9-10). See 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Long advances the Mountain State treatment records as a reason for remand, but those records show that after a few therapy sessions, despite appearing "downcast" and "anxious," Long was able to remain attentive and cooperative, her mood was "normal with no signs of either depression or mood elevation," her thinking was "logical" and thought content was "appropriate," and her judgment was "intact" (R. #814).

ECF No. 22-1 at 15. As with the shoulder bursitis, Defendant argues the ALJ's determination that Plaintiff's mental limitations are not severe is supported by substantial evidence and should not be disturbed by this Court.

Upon review, the undersigned finds the ALJ's severity determinations of Plaintiff's mental limitations and shoulder bursitis are supported by substantial evidence. The ALJ's decision follows an orderly pattern and shows how specific evidence leads to a specific conclusion. SSR 82-62,

1982 WL 31386 ("The rationale for a disability determination must be written so that a clear picture of the case can be obtained. The rationale must follow an orderly pattern and show clearly how specific evidence leads to a specific conclusion."); SSR 83-14, 1983 WL 31254 ("There must be findings of fact and recitation of evidence which supports each finding"). In considering Plaintiff's mental limitations, the ALJ properly assessed all four of the paragraph B criteria and concluded Plaintiff had only mild mental limitations. The ALJ provided rationale that these mental limitations were well controlled with medication and appropriate treatment. In her decision, the ALJ provides thorough citations to the Plaintiff's record regarding her range of shoulder motion, muscular capabilities, and treatment record. The ALJ provided a clear conclusion that Plaintiff's right shoulder bursitis is not severe as it causes no more than minimally vocationally relevant limitations, and the ALJ explains that the record which was considered by the ALJ provides support that this condition is well-controlled with medication and appropriate treatment.

The undersigned finds that the ALJ's decision regarding the severity of both Plaintiff's shoulder bursitis and mental limitations are supported by substantial evidence or "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This court may not substitute its own judgment where the decision is supported by substantial evidence." Hays, 907 F.2d at 1456 (citing Laws, 368 F.2d at 642; Snyder v. Ribicoff, 307 F.2d 518, 529 (4th Cir. 1962)). Accordingly, the undersigned finds no errors in the ALJ's determination that Plaintiff's shoulder bursitis was not severe and that Plaintiff's mental limitations were mild.

## VI. RECOMMENDED DECISION

For the reasons articulated above, the undersigned recommends Plaintiff's Motion for Summary Judgment be **GRANTED**, ECF No. 20, Defendant's Motion for Summary Judgment be

**DENIED**, ECF No. 22, and this matter be **REVERSED and REMANDED for reconsideration.** Specifically, the undersigned recommends that upon remand, the ALJ perform the required RFC assessment as to Plaintiff's capacity to perform relevant work functions considering her credible mental limitations, in light of the new RFC, the ALJ reconsider whether Plaintiff's borderline age situation merits a non-mechanical application of the GRID Rules and a finding of disability, and/or that the ALJ perform a step five analysis as Plaintiff is unable to perform her past relevant work.

The parties shall have **fourteen (14) days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge.

Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to provide an authenticated copy of this Report and Recommendation to counsel of record.

Additionally, as this report and recommendation concludes the referral from the District Court, the Clerk is further **DIRECTED** to terminate the magistrate judge's association with this case.

**Respectfully submitted December 28, 2021.**

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE